


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

KEITH A. HOLMES, on behalf of himself and all others similarly situated,

Plaintiff,

**Civil Action No.:**

V.

**COMPLAINT**

THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE TO C-BASS CERTIFICATES, SERIES 2004-CB5, OCWEN FINANCIAL CORPORATION, PHH MORTGAGE CORPORATION, NEWREZ, LLC, MCCABE, WEISBERG & CONWAY, LLC, JOHN DOE #1 to JOHN DOE # 10," the last 10 names being fictitious and unknown to plaintiff, the persons or parties intended being the person or parties, if any, named in the complaint. JANE DOE #1 to JANE DOE # 10," the last 10 names being fictitious and unknown to plaintiff, the persons or parties intended being the person or parties, if any, named in the complaint.

Defendants,

---------------------------------------------------------------X

Plaintiff, Keith A. Holmes, *Pro Se*, for and by his Complaint, against Defendants Bank of NY Mellon ("BONY"), Ocwen Financial Corporation ("Ocwen"), PHH Mortgage Corporation ("PHH"), NewRez, LLC ("NewRez") and McCabe, Weisberg & Conway, LLC ("McCabe") alleges as follows:

## INTRODUCTION

1. Plaintiff brings this suit for damages brought by an individual consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962 and Regulation F ("FDCPA"),

Regulation X of the Real Estate Settlement Practices Act ("RESPA"), and New York General Business Law § 349 Deceptive Acts and Practices Law.

2. The plaintiff, Keith A. Holmes is the owner of a parcel of real property located at 636 Sharon Lane, Yorktown Heights, New York (Westchester County). The plaintiff and his wife, Christine, purchased the property as their primary residence in April of 2004.

3. The purchase of the property was financed with a first and second mortgage(s) through Wilmington Finance Corp. Once funded, the loans were packaged into a pool of loans and sold off as part of a residential loan syndication. Upon syndication, Litton Loan Servicing became the servicer of the plaintiff's loans. Plaintiff's mortgage was included in a loan syndication as part of C-BASS CERTIFICATES, SERIES 2004-CB5.

4. Adversely affected by the economic downturn of 2008, the plaintiff defaulted on his mortgage in March of 2008. A modification was completed immediately thereafter and then, unable to keep up the with the payments, plaintiff defaulted again in June of 2008.

5. For a period of six (6) years, nine (9) months and ten (10) days, the plaintiff received little, to no communication from the servicer or the owner of the plaintiff's mortgage.

6. In 2014, BONY purchased the plaintiff's mortgage from JPMorgan Chase as Trustee for C-BASS CERTIFICATES, SERIES 2004-CB5.

7. On April 11, 2015, a period of six (6) years, nine (9) months and ten (10) days after the Statutory Deadline afforded to lenders for recovery of defaulted mortgages under NY CPLR § 213 (4), to file for foreclosure, Bank of NY Mellon, through its servicer and attorney-in-fact, Ocwen, knowingly commenced a ***time-barred*** foreclosure proceeding against the Plaintiffs residence. The law firm of McCabe, Weisberg & Conway, LLC was retained to litigate the foreclosure.

## PARTIES, JURISDICTION AND VENUE

8. Plaintiff, Keith A. Holmes, is a United States citizen domiciled in New York. He resides in Westchester County, New York.

9. Upon information and belief, defendant Bank of NY Mellon is a National Association, domiciled in Delaware and as the plaintiff's debt was in default at the time of purchase, is a "debt collector" under 15 U.S.C. § 1692.

10. Upon information and belief, defendant Ocwen Financial Corp. is a non-bank residential mortgage servicer. Ocwen is a United States corporation domiciled in Florida, maintains a headquarters office in the state of Florida and is a "debt collector" under 15 U.S.C. § 1692 and is engaged in the business of servicing residential mortgages and collecting the debts associated therewith.

11. Upon information and belief, defendant PHH Mortgage Corporation, a subsidiary of Ocwen Financial Corporation, is a "debt collector" under 15 U.S.C. § 1692 and is engaged in the business of servicing residential mortgages and collecting the debts associated therewith.

12. Upon information and belief, defendant NewRez, LLC, is a United States corporation domiciled in Pennsylvania, maintains a headquarters office in the state of South Carolina and is a "debt collector" under 15 U.S.C. § 1692 and is engaged in the regular business of servicing residential mortgages and collecting the debts associated therewith.

13. Upon information and belief, defendant McCabe, Weisberg & Conway, LLC is a "debt collector" under 15 U.S.C. § 1692. McCabe's primary business is the prosecution of residential foreclosure actions.

14. Upon information and belief, BONY controls the collection activities of Ocwen/PHH, NewRez and McCabe such that there exists a principal-agent relationship between BONY and Ocwen/PHH, NewRez and McCabe.

15. Upon information and belief, Ocwen/PHH controls the collection activities of BONY, NewRez and McCabe such that there exists a principal-agent relationship between Ocwen/PHH and BONY, NewRez and McCabe.

16. Upon information and belief, McCabe controls the collection activities of BONY, Ocwen/PHH and NewRez such that there exists a principal-agent relationship between McCabe and Ocwen/PHH and BONY and NewRez.

17. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332 (a) – diversity because the plaintiff and defendants are citizens of different states and the amount in controversy is over $75,000.00.

18. Venue is proper in this judicial district because plaintiff's property is located in the Southern District of New York – See 28 U.S.C. § 1391 (b)(2).

19. This Court may exercise personal jurisdiction over the defendants as they are registered to conduct business within the state where the plaintiff's property is located and the original mortgage and note were entered into in New York State, and consideration was paid by the plaintiff at the outset of the note and mortgage.

## GENERAL ALLEGATIONS

20. Plaintiff's property was financed with a first and second mortgage(s) through Wilmington Finance Corp. The loans were ultimately packaged into a pool of loans and sold off as part of a residential loan syndication. Upon syndication, Litton Loan Servicing was the servicer of the plaintiff's loan. Plaintiff's mortgage was included in a syndication known as part of C-BASS CERTIFICATES, SERIES 2004-CB5.

21. Adversely affected by the economic downturn of 2008, the plaintiff defaulted on his mortgage in March of 2008. A modification was completed immediately thereafter and then, unable to keep up with the payments, the plaintiff defaulted again in June of 2008.

22. For a period of six (6) years, nine (9) months and ten (10) days, plaintiff received very little, to no communication from the servicer or the owner of the first loan.

23. In 2014, the Plaintiff's loan was sold to BONY and Ocwen purchased Litton Loan Servicing. Ocwen then became the new servicer of the plaintiff's loan and has since acquired PHH Mortgage Services.

24. BONY, as a specific line of business, purchases defaulted, ***time-barred*** mortgages for pennies on the dollar and illegally forecloses on consumers in a thinly veiled **equity harvesting scheme.**

25. Said equity harvesting scheme is structured so that the defendant, BONY, is able to purchase a defaulted, ***time-barred*** mortgage for as little as 1% to 5% of the principal and then file for foreclosure against unsuspecting consumers, claiming the entire unpaid interest, principal and advanced escrows as due and owing. For a typical defaulted, ***time-barred*** mortgage, the defendants seek to harvest almost 80% of a home's market value. This structure provides the defendants with an incentive to foreclose rather than modify mortgages.

26. BONY purchased the defendant's mortgage with ***Mens Rea.***

27. In addition to the plaintiff's mortgage, basic research shows BONY attempted to or was successful in foreclosing on the following New York homeowners with defaulted, ***time-barred*** mortgages:

| | |
|---|---|
| *1.* | *Bank of NY Mellon V. Craig 2019 NY Slip Op 00846* |
| *2.* | *Bank of NY Mellon V. Slavin 2017 NY Slip Op 08769* |
| *3.* | *1081 Stanley Ave, LLC V. Bank of NY Mellon 2020 NY Slip Op 00559* |
| *4.* | *Bank of NY Mellon V. Bissessar 2019 NY Slip Op 03755* |
| *5.* | *Bank of NY Mellon V. Malanado 2019 NY Slip Op 02307* |
| *6.* | *Bank of NY Mellon V. Ahemd 2020 NY Slip Op 01591* |
| *7.* | *Bank of NY Mellon V. Yacoob 2020 NY Slip Op 02451* |
| *8.* | *Bank of NY Mellon V. Viola 2020 NY Slip Op 01895* |
| *9.* | *Bank of NY Mellon V. Celestin 2018 NY Slip Op 05815* |
| *10.* | *Bank of NY Mellon V. Alli 2019 NY Slip Op 06735* |
| *11.* | *Bank of NY Mellon V. Morris 2019 NY Slip OP 03943* |
| *12.* | *Bank of NY Mellon V. Alvarado 2020 NY Slip Op 07530* |
| *13.* | *Bank of NY Mellon V. Dieudonne 2017 NY Slip Op 32982(U)* |
| *14.* | *Bank of NY Mellon V. 11 Bayberry St., LLC 2020 NY Slip Op 05175* |
| *15.* | *Bank of NY Mellon V. Lagasse 2020 NY Slip Op 06481* |
| *16.* | *Bank of NY Mellon V. Sakkal 2021 NY Slip Op 01021* |
| *17.* | *Bank of NY Mellon V. Mor 2022 NY Slip Op 00162* |
| *18.* | *Bank of NY Mellon V. Regalbuto 2021 NY Slip Op 30054(U)* |
| *19.* | *Bank of NY Mellon V. Hutchinson 2021 NY Slip Op 00284* |
| *20.* | *Bank of NY Mellon V. Wiggins 2015 NY Slip Op 32359(U)* |
| *21.* | *Retemaih V. Bank of NY Mellon 2021 NY Slip Op 03478* |
| *22.* | *Bank of NY Mellon V. Muriqi 2022 NY Slip Op 02972* |

28. In the period between BONY purchasing plaintiff's Note and Mortgage and April 11, 2015, BONY and Ocwen Loan Servicing, LLC, plotted to harvest the equity in the plaintiff's primary residence.

29. On April 11, 2015, with scienter of the ***time-barred*** status of the plaintiff's mortgage and *mens rea*, and in willful violation of CPLR § 213(4), BONY filed for foreclosure against the plaintiff's primary residence.

30. At no time did the defendants ever inform the plaintiff that the debt they were seeking to collect was ***time-barred.***

31. At no time, after the plaintiff's default in June of 2008 and prior to the April 2015 foreclosure, did the defendants offer the plaintiff a modification or seek to resolve the plaintiff's mortgage situation.

32. After extensive litigation, New York State Supreme Court Judge David Everett, A.S.J.C., rendered a Decision and Order on September 01, 2017, ***dismissing BONY's Complaint,*** finding their action ***time-barred*** and awarded, ***if*** successful in their foreclosure proceedings, **only** six years of individual mortgage payments due prior to the filing of the Summons and Complaint – an amount of approximately $210,000.00, before escrows (72 payments X a monthly payment of principal and interest of $2,917.00). Both parties were then ordered to settlement conference.

33. Despite Judge Everett's Decision and Order finding the defendants ***time-barred,*** the defendants continued their litigation of the 2015 Foreclosure Action.

34. After the Everett Decision, the plaintiff was willing to accept a loan modification at the projected settlement amount of $210,000.00 plus any escrows owed for that period.

35. The defendants, tellingly, never availed themselves of the means of redress statutorily afforded to them to reargue, renew or appeal Judge Everett's September 01, 2017 Decision and Order under NY CPLR § 2221 and § 5513, respectively.

36. During the settlement conferences, BONY, through its attorneys and servicer, were non-participatory and the referee ordered a settlement trial.

37. At the settlement trials, BONY, through its attorney-in-fact, Ocwen, was successful in reversing Judge Everett's "very specific" and narrow Decision and obtained a judgment against the Plaintiff for $683,610.00.

38. After a final judgment was issued by the New York State Supreme Court against the plaintiff's ***time-barred*** mortgage, plaintiff filed for Chapter 13 Bankruptcy protection on August 20, 2019.

39. In February of 2022 and after New York State lifted its COVID-19 Foreclosure Moratorium, the defendants offered the plaintiff a loan modification consisting of three (3) trial payments of $3,857.56 for the months of March, April and May of 2022.

40. The plaintiff made all three payments to PHH's offices in Mount Laurel, NJ, as directed by the modification by certified bank check.

41. All three (3) trial modification payments were delivered via overnight mail by United States Postal Service.

42. All three (3) trial modification payments were signed for by "R. Spencer," by information and belief, an employee of PHH, at PHH's Mount Laurel, NJ address.

43. On March 25, 2022, plaintiff received a letter from PHH indicating they did not receive the first modification payment.

44. The plaintiff responded in writing on March 26, 2022, notifying PHH the payment was made, delivered via overnight mail on March 01, 2022 and sign for by a PHH employee. A copy of the certified bank check and an overnight signature receipt were included in the correspondence.

45. The plaintiff continued to make the following two (2) payments for April and May in the same manner, via certified bank check and overnight mail, as the plaintiff was in compliance with the modification terms.

46. PHH then rejected the modification as "unpaid" having never located the plaintiff's first payment despite it being received at PHH's Mount Laurel office. PHH then returned the plaintiff's remaining two payments.

47. In violation of Regulation X, provision 11, PHH did not offer to correct their error of losing the plaintiff's March 2022 modification payment.

48. The defendants then offered the plaintiff a new modification but increasing the interest rate from 3.5% to 5% per annum and increased the monthly payment from $3,857.56 to $4,588.88, an increase of 18.9%. The defendants then gave the plaintiff two days to make the first revised modification payment of $4,588.88.

49. On December 30, 2022, New York State signed the New York State Foreclosure Abuse and Prevention Act ("FAPA") into law. The new FAPA law was intended to address the very abuses the defendants have brought upon Plaintiff during the entire course of a ***time-barred*** foreclosure process.

50. The defendant(s), with full knowledge of the mortgage being ***time-barred***, sent, and continue to send plaintiff monthly mortgage statements, alleging an "amount owed" under the mortgage and note.

51. The defendants, with full knowledge of the mortgage being ***time-barred,*** continue to bring foreclosure proceedings against the plaintiff's property to this day.

**COUNT I**

**The Fair Debt Collection Practices Act ~ 15 U.S.C. 1692**

52. Plaintiff hereby re-alleges and incorporates by reference each and every allegation contained above as fully set forth in detail herein.

53. All communications to the plaintiff are to be evaluated under the "unsophisticated consumer" standard.

54. The defendants have violated 15 U.S.C. § 1692 (e) by using false and deceptive representations with collection of the debt claimed to be owed by the plaintiff.

55. The defendants have violated 15 U.S.C. § 1692 (e) by misrepresenting the character, amount, or legal status of the asserted debt.

56. The defendants have violated 15 U.S.C. § 1692 (e) by attempting to collect on a debt where the statute of limitations has expired.

57. The defendants, in using their servicing platform, created a false impression that the debt is still owed and have violated 15 U.S.C. § 1692 (f)(1).

**COUNT II**

**The Fair Debt Collection Practices Act ~ 15 U.S.C. § 1692 /**

**Regulation F ~ 12 U.S.C § 1006.26(b) & 1006.22**

58. Plaintiff hereby re-alleges and incorporates by reference each and every allegation contained above as fully set forth in detail herein.

59. All communications to the plaintiff are to be evaluated under the "unsophisticated consumer" standard.

60. In violation of 12 U.S.C. § 1006.26, "Regulation F" of the Fair Debt Collections Practices Act, the defendants filed a ***time-barred*** foreclosure against the plaintiff. 12 U.S.C. § 1006.26(b) states: "*A debt collector must not bring or threaten to bring a legal action against a time-barred debt.*" With the filing of the April 11, 2015 foreclosure action, the defendants clearly knew the plaintiff's mortgage was time-barred.

61. In violation of 12 U.S.C. § 1006.22(b), "Regulation F" of the Fair Debt Collections Practices Act, the defendants used an Unfair and Unconscionable Means to collect the time-barred debt. There is no more Unconscionable collection method than to foreclose on a property when you are ***not legally*** permitted to collect on the debt. 12 U.S.C. §

1006.22(b) states: "A debt collector must not collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

**The Real Estate Settlement Practices Act /**

**Regulation X ~ 12 CFR Part 1024**

62. Plaintiff hereby re-alleges and incorporates by reference each and every allegation contained above as fully set forth in detail herein.

63. All communications to the plaintiff are to be evaluated under the "unsophisticated consumer" standard.

64. On March 26, 2022, the defendants, upon written notification by the plaintiff of the certified modification payment, defendants failed to rectify its errors after being clearly shown the plaintiff's first payment was received at the servicer's offices. The defendants have violated 12 CFR Part 1024.25(e)(1)(a)(b) of Regulation X of the Real Estate Settlement Procedures Act.

**COUNT III**

**New York State General Business Law § 349 ~ Deceptive Acts and Practices**

65. Plaintiff hereby re-alleges and incorporates by reference each and every allegation contained above as fully set forth in detail herein.

66. All communications to the plaintiff are to be evaluated under the "unsophisticated consumer" standard.

67. The New York State General Business Law § 349 prohibits the use of deceptive and unfair practices in connection of debts.

68. The collection of any debts associated with a residential mortgage are consumer-oriented in nature. This conduct potentially affects similarly situated consumers who have mortgages in default with the defendants.

69. Defendants BONY, Ocwen, PHH, NewRez and McCabe are engaged in deceptive acts and practices in the collection of debts.

70. This conduct includes but is not limited to the filing of a time-barred foreclosure proceeding against the plaintiff, continuation of that proceeding once they were found to be time-barred, obtaining a Judgment of Foreclosure and Sale under false pretenses while knowing the debt was time-barred and now attempting to complete a foreclosure sale of the plaintiff's primary residence.

71. The defendants actions are materially deceptive and injurious.

72. As a result of the commencement of the statutory time-barred 2015 Foreclosure Action by the defendants, the plaintiff has suffered severe emotional distress and anxiety.

73. As result of the continued foreclosure efforts by the defendants after being found time-barred by a New York State Supreme Court Justice, the plaintiff has suffered severe emotional distress and anxiety.

74. With their time-barred Foreclosure Action, the defendants have destroyed the plaintiff's name and good standing in the commercial real estate private equity community. A community the plaintiff relies on to make a living and provide for his family.

**PRAYER FOR RELIEF**

75. Wherefore, Plaintiff, Keith A. Holmes respectfully demands Judgment and Orders against the Defendants as follows:

a. For a Judgment finding the plaintiff's mortgage is time-barred.

b. For an Order that the Defendants and their assigns, successors and or affiliated entities be now and forever barred from any and all claims to the Plaintiff's Estate in the premises hereinbefore described, or lien or encumbrance thereupon of any kind or nature whatsoever; and that is adjudged and decreed that the plaintiff is the lawful owner of said

premises in fee-simple and is entitled to lawful, peaceful, uninterrupted possession and quiet enjoyment thereof as against the Defendants herein, and all other whomsoever.

c. An Order quieting title to the fee-simple interest in 636 Sharon Lane, Yorktown Heights, New York, pursuant to New York Real Property Actions and Proceedings Law (RPAPL) Article 15.

d. For actual damages in an amount of $683,610.00.

e. For damages as defined under 15 U.S.C. § 1692.

f. For such other and further relief as may be just and proper.

Dated: June 12, 2023

Respectfully submitted,

Keith A. Holmes
*Pro Se*
636 Sharon Lane
Yorktown Heights, NY 10598
C: 917-880-6535
e-mail: kholmes@centurion-rg.com